UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Louis Edward Cox, III,

*Plaintiff*,

v.

Jonathan Pobuda, et al.

*Defendants*.

Court File 0:26-CV-01838 (NEB/EMB)

**MEMORANDUM IN SUPPORT OF DEFENDANTS POBUDA, OTTNEY, KLUND, CAIN, HAMILTON AND SCHROEDER'S RULE 12(b)(6) MOTION TO DISMISS PLAITNIFF'S FIRST AMENDED COMPLAINT**

## INTRODUCTION

This *pro se* Section 1983 suit is brought by Plaintiff Louis Cox. [redacted] MDP officers then went to their apartment; briefly entered it to ensure that it was unoccupied (and any evidence of criminal activity was not being destroyed or removed); expressly disclosed this brief residential seizure in the warrant

application that they submitted shortly thereafter; and then, after a search warrant was duly issued, re-entered the apartment to conduct the search authorized by the same.

Under the aegis of Section 1983, Plaintiff now challenges the brief residential seizure, the search warrant application, the search in execution of the warrant, a purported (but unspecified) "failure to intervene" at an unspecified step in these events (by unspecified Defendants), and additionally purports to assert a malicious prosecution claim related to the criminal prosecution that ensued as well as a due process claim related to the MPD's retention of a cell phone that was seized from Plaintiff on the night in question. As set forth below, all of these claims should be soundly dismissed, either for failure to state a claim and/or on qualified immunity grounds. In the Eighth Circuit, "[t]he act of securing [an] apartment while awaiting a search warrant comports with the Fourth Amendment," *United States v. Ruiz-Estrada*, 312 F.3d 398, 404 (8th Cir. 2002)—and at minimum, Plaintiff cannot meet his burden to show that he had a "clearly established" Fourth Amendment right to be free of a brief residential seizure in the circumstances presented. The warrant application expressly disclosed this brief entry to the responsible judge, and the search conducted by MPD was in execution of a duly-issued warrant and thus fully compliant with the Fourth Amendment. Further, at the time of the relevant events, the Eighth Circuit did not yet recognize any Fourth Amendment malicious prosecution claim at all—which, among another grounds, dooms Plaintiff's claim asserted on that theory. Plaintiff's remaining claims likewise fail for various pleading deficiencies discussed in detail below.

For these reasons and as elaborated upon herein, this action should be dismissed in its entirety, and at least partly with prejudice.

## LEGAL STANDARDS

### I. Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of a complaint. To survive such a motion, a complaint must allege facts sufficient to "plausibly give rise to entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In assessing a Rule 12(b)(6) motion, the Court generally "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and legal conclusions—including those that are couched as factual allegations—enjoy no such deference. *Iqbal*, 556 U.S. at 678. And while *pro se* complaints are to be construed liberally, the district court will not construct a legal theory for a plaintiff that assumes facts that have not been pleaded. *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

The Court is not strictly limited to the allegations set forth in the complaint, but may also properly consider documents that are "necessarily embraced by the complaint"—and thus "are not matters outside the pleading." *Enervations, Inc. v. Minn. Min. & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004); *see also Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012) ("While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion," they may "additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned.").

Where no party refutes their authenticity or completeness, *see Scott v. Harris*, 550 U.S. 372, 378 (2007), police body-worn "videos of an incident" are among the types of records that are "necessarily embraced by the pleadings," *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023); *see also Waters v. Madson*, 921 F.3d 725, 731 n.2 (8th Cir. 2019). The Court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence." *Waters*, 921 F.3d at 734 (citation omitted); *see also, e.g.*, *Johnson v. Stahl*, No. 24- CV-1065 (ECT/DJF), 2025 WL 1435757, at *1 (D. Minn. May 19, 2025); *Williams v. City of Minneapolis Police Dep't*, No. 23-CV-3459 (ECT/ECW), 2025 WL 835825, at *3 (D. Minn. Mar. 14, 2025).

Finally, while "'[o]rdinarily'" dismissal pursuant to Rule 12(b)(6) "'should be with leave to amend,' …. when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate." *Wolff v. Bank of New York Mellon*, 997 F. Supp. 2d 964, 980 n.8 (D. Minn. 2014) (quoting *Michaelis v. Neb. State Bar Ass'n,* 717 F.2d 437, 438-39 (8th Cir. 1983)); *see also, e.g.*, *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 832 (D. Minn. 2012) (similar).

## II. Qualified Immunity

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "To overcome qualified immunity at the motion to dismiss stage, a plaintiff 'must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly

established at the time of the challenged conduct.'" *Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) (citation omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson*, 555 U.S. at 236.

To be sufficiently "clearly established" so as to overcome qualified immunity, the "contours" of the right in question must, "at the time of the alleged infraction," *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013), have been "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Dundon v. Kirchmeier*, 85 F.4th 1250, 1255 (8th Cir. 2023) (citation omitted). The "salient question" is whether the law at the time of the alleged violation gave the defendant police officers "fair warning" that their conduct was unconstitutional. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Thus, qualified immunity affords law enforcement officers a zone of "breathing room" to exercise "reasonable but mistaken judgment," and in so doing, "protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations omitted); *see also, e.g.*, *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.").

## FACTUAL AND PROCEDURAL BACKGROUND

### I. Factual Background

Consistent with the review standard set forth above with respect to Rule 12(b)(6) motions to dismiss, the following allegations and facts are properly before the Court on this motion.

On the evening of October 23, 2020, MPD Officer Jonathan Pobuda submitted an application for a warrant for the MPD to search Plaintiff's apartment, located at 2930 Blaisdell Avenue South, Apartment 106 (the "Blaisdell apartment"). Defendants' Exhibit ("DEX") 1.[1] Specifically, the application averred [redacted]

- [redacted] [redacted]
- [redacted] [redacted]
- [redacted] [redacted]
- [redacted] [redacted]
- [redacted] [redacted]

[redacted]

[redacted]

> [redacted]

> [redacted]

[1] Defendants' Exhibits, referred to throughout this brief with the prefix "DEX," are filed under two declarations submitted herewith. DEX 1, DEX 2, and DEX 3 are documents filed under the Declaration of Michael Brey. DEX 4 and DEX 5 are videos filed under the Declaration of Sandra Mykleby.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[2] [redacted] appears to be a typographical error. However, this "one minor inaccuracy in the otherwise thorough search-warrant affidavit," *Ryno v. City of Waynesville*, 58 F.4th 995, 1008 (8th Cir. 2023), neither alters nor undermines any of the bases for dismissal set forth herein—especially where (1) it is plain from the face of the application that Cox was the individual suspected of criminal activity, and as to whom the search warrant was requested, and (2) Ross and Cox both resided at the Blaisdell apartment at this time. *See id.* (affirming that qualified immunity barred the plaintiff's asserted *Franks* claim challenging the accuracy of information relied upon in the obtaining of a search warrant, notwithstanding a similar "slight inaccuracy" in the warrant affidavit there at issue).

[redacted]

*Id.* (emphasis added).

Thus, the warrant application expressly disclosed to the judge that, prior to submission of the application, MPD officers [redacted] *Id.* This entry began at approximately 10:58 pm, First Amended Complaint ("1AC"), ECF 12 ¶ 10, DEX-4, DEX-5 (body-worn camera footage taken by Sergeant Klund and Officer Ottney, respectively), and concluded approximately four to five minutes later, at 11:02 pm, *id.* Beyond confirming that no one was present in the apartment, MPD officers did not search the apartment or seize any evidence during this brief and limited entry. *Id.* Nor did the ensuing warrant application in any way rely on what the MPD officers who made this initial entry had seen while inside as a basis for probable cause for the requested search. DEX-1.

Judge Patrick Robben promptly issued a search warrant application. DEX-2. Pursuant to this duly-issued search warrant—and only after it formally issued—at approximately 11:52 pm MPD officers re-entered the Blaisdell apartment and conducted a full search. 1AC ¶ 14. The search yielded, among other things, [redacted] DEX-3.

## II. <u>Procedural Background</u>

Plaintiff initiated this action on March 11, 2026. ECF 1. On April 9, 2026, he exercised his right to amend his pleading once as a matter of course. *See generally* 1AC. This

Court conducted a *sua sponte* review of this pleading, and on June 1, 2026 issued an Order dismissing certain of the claims asserted therein. ECF No. 28 ("June 1 Order"). Specifically, the June 1 Order dismissed Plaintiff's request of injunctive relief for lack of standing, *id.* at 4, as well as his "Civil Conspiracy" (Count V), "Supervisory Liability" (Count VII), and "Municipal Liability" ("*Monell*") (Count VIII) claims for failure to state a claim, each without prejudice, *id.* at 5-8. Because each of the individually-named Defendants worked for the City of Minneapolis ("City") at the time of the alleged events, and the City was already named as a purported Defendant, the Court further dismissed, with prejudice, each of Plaintiff's "official capacity claims against all individual officers." *Id.* at 7. And because the *Monell* claim was the sole claim asserted against the City, the Court correspondingly dismissed the City as a party to this action, *id.* at 7-8. Finally, the Court also dismissed a purported Defendant ("Snell S.") because the pleading contained "no factual allegations attributing any specific action, decision, or omission to him." *Id.* at 8.

Plaintiff subsequently obtained waivers of service for the six remaining, individually-named MPD officer Defendants. *See* ECF Nos. 41-46. He twice sought the Court's leave to file (two different) Second Amended Complaints, *see* ECF Nos. 30-32, 35, 49-50; however, the Court denied the first such motion as premature, ECF No. 38, and Plaintiff ultimately moved the Court to withdraw his second motion to further amend, informing the Court that he had instead determined to proceed on his First Amended Complaint (ECF No. 12), *see* ECF 57. On August 20, 2026, the Court granted the latter motion in relevant part, and ordered Defendants to respond to the same by September 3, 2026. ECF No. 74.

Defendants accordingly respond herein to the claims set for the in the First Amended Complaint that survive the Court's June 1 Order—namely, Counts I, II, III, IV, VI, and IX. For the reasons set forth below, each of these remaining claims should be dismissed.

## ARGUMENT

### I. Plaintiff Fails to Allege Any Personal Participation in the Challenged Events on the Part of Several Defendants

As a threshold matter, several claims must be dismissed as to several Defendants due to a lack of any alleged "personal participation" on the part of the Defendants in the challenged events. It is well-established that "[l]iability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Wilson v. Northcutt,* 441 F.3d 586, 591 (8th Cir.2006*)* (citing *Doran v. Eckold,* 409 F.3d 958, 965 (8th Cir. 2005) (en banc)). Thus, Section 1983 does not sanction tort by association, *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798 (8th Cir. 2010), but to the contrary "requires personal participation in an alleged constitutional deprivation." June 1 Order at 8 (citing *Jackson v. Nixon*, 747 F.3d 537, 543 (8th Cir. 2014) and *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017)).

Plaintiff's operative pleading is utterly devoid of any allegations regarding *any* specific actions taken by *any* named Defendant—and thus fails to meet these standards across-the-board. *See* 1AC ¶¶ 25, 30, 35, 40, 50-52, 67. Nonetheless, the record properly before the Court on this motion reflects (1) that Officer Pobuda prepared, signed, and submitted the search warrant application challenged in Count III, *see* DEX-1; and (2) that Sergeant Klund and Officer Ottney were among the officers who conducted the pre-warrant seizure of the Blaisdell apartment challenged in Count I, *see* DEX-4; DEX-5. Thus (setting aside the legal

deficiencies in those claims, addressed *infra*), Plaintiff properly pleads Count III against Officer Pobuda and Count I against Sergeant Klund and Officer Ottney. With those sole exceptions, however, neither the First Amended Complaint nor the record presently before the Court reflects the requisite personal participation by any other named Defendant in any of the challenged actions.[3] Accordingly, all other named Defendants should be dismissed as to all other claims on this ground alone.

## II. **All Claims Remaining in this Action Must Be Dismissed for Failure to State a Claim and/or on the Ground of Qualified Immunity**

Even assuming, however, that each Defendant is indeed properly named with respect to each of Plaintiff's remaining claims, *all* Defendants are in any event entitled to dismissal of *all* of these claims either because they fail to plausibly state any claim upon which relief may be granted, and/or the ground of qualified immunity. Given the dearth of allegations regarding the specific actions that Plaintiff challenges as to any particular Defendant, the remainder of this memorandum will accordingly explain why, regardless of which actors were involved in which event(s), any possible Defendant to each remaining claim would be entitled to dismissal, including on the ground of qualified immunity.

---

[3] In the interest of candor, the below-undersigned defense counsel note that they have reviewed BWC footage of the search of the Blaisdell apartment that was conducted in execution of the search warrant (*i.e.*, the subject of Count II). Although these facts are not presently before the Court, this footage reflects that Sergeant Klund, Officer Ottney, and Officer Andrew Schroeder were among the law enforcement officers who executed this warrant. Because this additional footage has no relevance to the substantive grounds for dismissal of Count II set forth below (or to any other substantive argument set forth herein), Defendants are not submitting this footage to the Court at this time; however, they stand ready to do so upon request by this Court.

### A. Count I (“Unlawful Warrantless Entry”)

In Count I, Plaintiff asserts that MPD’s brief entry into the Blaisdell apartment, “to secure the apartment” while the officers awaited the expected issuance of a search warrant, *see* DEX-1, violated his rights under the Fourth Amendment. 1AC ¶¶ 25-28. In the Eighth Circuit, however, “[t]he act of securing [an] apartment while awaiting a search warrant comports with the Fourth Amendment,” *Ruiz-Estrada*, 312 F.3d at 404 (citing *United States v. Roby,* 122 F.3d 1120, 1125 (8th Cir.1997))—and, at minimum, there is no “clearly established” right under the Fourth Amendment to be free of a temporary residential seizure of this nature. Accordingly, because any Defendant against whom this Count I may otherwise be properly pled is entitled to qualified immunity, it should be dismissed.

Whether an officer’s conduct violated clearly established law is an “essentially legal question.” *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998) (citation omitted). “To be clearly established, a legal principle . . . must be ‘settled law’ . . . [that is] clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply.” *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Clearly established law should not be defined “at a high level of generality” but “must be ‘particularized’ to the facts of the case.” *White v. Pauly*, 580 U.S. 73, 79, (2017) (citations omitted). Accordingly, “[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.” *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Because the plaintiff has the burden of demonstrating that the law confirming his constitutional right was clearly established, *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007), Plaintiff must identify “controlling

authority" from the Supreme Court or Eighth Circuit, or "a 'robust consensus of cases of persuasive authority'" that places the constitutional question "beyond debate." *De La Rosa v. White*, 852 F.3d 740, 746 (8th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, (2011)). In this case, Plaintiff can do neither.

The Fourth Amendment, of course, protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, and its "touchstone" is "reasonableness," *United States v. Knights,* 534 U.S. 112, 118 (2001). In support of the asserted right that he seeks to vindicate through Count I, Plaintiff relies on *Payton v. New York*, 445 U.S. 573, (1980) and *Kirk v. Louisiana*, 536 U.S. 635 (2002), both of which stand for the broad proposition that police may not "mak[e] a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest." *Payton*, 445 U.S. at 575; *Kirk*, 536 U.S. at 638. However, while Defendants dispute neither authority, in *Ruiz-Estrada*, 312 F.3d 398, the Eighth Circuit confronted the much more specific—and thus, applicable—question of whether the Fourth Amendment's "reasonableness" standard is satisfied when police officers who "reasonably suspected" that a residence was being used for criminal purposes—[redacted]—entered the residence for the purpose of "securing the apartment while awaiting a search warrant." *Id.* at 404. There, after surveilling a particular apartment for evidence of drug trafficking and eventually arresting one of its residents (while the resident was away from the apartment), "one police officer secured" the apartment in question, "while another officer applied for a search warrant." *Id.* at 400. "In securing the apartment, police discovered" another individual—Mr. Ruiz-Estrada—"watching television in the living room." *Id.* After

an investigation determined that Mr. Ruiz-Estrada had keys to the apartment and "often stayed" there as well, and that he was—together with the first arrestee—conducting a narcotics operation out of the apartment, Ruiz-Estrada was criminally charged.

In the course of the prosecution, Ruiz-Estrada contested the admissibility of the evidence discovered in the apartment. The Eighth Circuit affirmed the district court's rejection of the suppression motion, holding that:

> The district court's finding that the officers acted reasonably in securing the apartment while awaiting a search warrant was not clearly erroneous. Based on their surveillance of [the first arrestee], officers reasonably suspected that he was conducting a narcotics operation out of Apartment 317. Officers secured the apartment to prevent the destruction of a suspected narcotics supply. The act of securing the apartment while awaiting a search warrant comports with the Fourth Amendment. Moreover, the affidavit filed in support of the search warrant contains no information indicating the police exploited their presence while securing the apartment.

312 F.3d at 404.

*Ruiz-Estrada* remains good law, and courts in this Circuit continue to apply this holding. *United States v. Accardo-Rainey*, No. 23-CR-229 (JWB/LIB), 2023 WL 10149010, at *4-14 (D. Minn. Nov. 30, 2023), *report and recommendation adopted,* No. CR 23-229 (JWB/LIB), 2024 WL 551290 (D. Minn. Feb. 12, 2024), for example, cited *Ruiz-Estrada* in support its recommendation to deny a motion to suppress evidence that had been obtained pursuant to a search warrant, on the asserted ground that while the police awaited the issuance of the warrant, they had a unlawfully occupied and seized the apartment where the evidence was found. Notwithstanding that there was concededly "no specific evidence that evidence inside the Residence would be destroyed prior to law enforcement obtaining a warrant," *id.* at 12, the *Accardo-Rainey* Report and Recommendation concluded—partly in express reliance on

*Ruiz-Estrada*, *id.* at *11—that the temporary seizure of the residence comported with the Fourth Amendment, *id.* at *11-12 (additionally emphasizing that there was, objectively, probable cause to believe that evidence of a crime was inside the home, and the fact that the seizure was for a "relatively short period of time," *i.e.*, "only three hours").[4] The district court adopted this recommendation in full—and in so doing, expressly affirmed the rule that "law enforcement may reasonably secure a residence to prevent the destruction or removal of evidence while awaiting a search warrant without violating the Fourth Amendment." 2024 WL 551290, at *4 (citing, *inter alia*, *Segura v. United States*, 468 U.S. 796, 810 (1984)).

Other courts in this District have reached similar conclusions. *See, e.g., Whalen v. Langfellow*, 731 F. Supp. 2d 868, 883 (D. Minn. 2010) ("securing the premises [of the defendant's residence] to prevent removal of the boxes" while the police awaited the issuance of a search warrant comported with the Fourth Amendment, and police officers were thus entitled to qualified immunity) (citing *Segura,* 468 U.S. at 810 and *Ruiz–Estrada,* 312 F.3d at 404); *United States v. Burrell*, No. 06-81 (JNE/RLE), 2006 WL 1715608, at *20-21 (D. Minn. June 19, 2006) (adopting in full Magistrate Judge's recommendation to deny motion to

[4] Notably, the *Accardo-Rainey* Report and Recommendation expressly rejected the movant's argument, made in reliance on *United States v. Ramirez*, 676 F.3d 755 (8th Cir. 2012), "that law enforcement remaining inside the Residence was unconstitutional because "[e]xigent circumstances did not justify law enforcement's decision to remain inside the apartment . . . without a warrant." 2023 WL 10149010, at *12. As *Accardo-Rainey* correctly held, the "exigent circumstances" doctrine—which allows for certain warrantless *searches*—is independent of the *Ruiz-Estrada* rule that permits certain brief residential *seizures*, and the presence of qualifying "exigent circumstances" are, accordingly, "not required for law enforcement to secure a residence pending the arrival of a search warrant." *Id.* at *12. To be clear, Defendants do not rely on the "exigent circumstances" doctrine in support of the qualified immunity arguments they set forth above and herein.

suppress premised on an allegedly unlawful pre-warrant seizure of the residence where the evidence was found, and affirming the rule that it is lawful for police to "temporar[ily] seiz[e]" a residence, where the seizures is "supported by probable cause" and "designed to prevent the loss of evidence while the police obtained a warrant in a reasonable period of time") (citation omitted); *see also State v. Nord*, No. 03-CR-19-401, 2019 WL 13536607, at *1-3 (Minn. Dist. Ct. Oct. 30, 2019) (denying motion to suppress on the ground that it was permissible under both the Fourth Amendment and the Minnesota Constitution for the police to enter the defendant's residence, prior to issuance of a warrant, to perform a "protective sweep," and, "[u]pon locating one person inside the house and confirming that no one else was in the residence, . . . to remain[] in the residence" until the search warrant issued).

Thus, in Count I Plaintiff does not allege any cognizable constitutional right, and any Defendant against whom Count I is otherwise properly asserted is entitled qualified immunity under the first prong of that analysis. Further, and also for the reasons given above, where—as here—a pre-warrant entry into a residence is for a brief duration; is supported by probable cause to believe evidence of a crime or contraband was present in the residence; is conducted for the limited purpose of securing the apartment against the potential destruction of evidence; and does not itself entail a search, it cannot—at minimum—be said that any purported "right" to be protected from such a seizure is "well-established" in this Circuit. Thus, qualified immunity bars this claim under its second prong, as well. *Cf. Brown v. State*, 230 N.J. 84, 109-12, (2017) (holding, under both the Fourth Amendment and the New Jersey state constitution, that while "in the future, law

enforcement officials may not . . . enter an apartment to secure it while awaiting a search warrant," that "New Jersey's precedent was not sufficiently clear" at the time of the challenged events, such that qualified immunity barred the plaintiff's claim challenging a pre-warrant residential seizure for this purpose).

**B. <u>Count III ("False or Misleading Warrant Affidavit")</u>**

Count III of the First Amended Complaint, which alleges that the search warrant application for the Blaisdell Apartment "omitted material facts," 1AC ¶ 35, must also be dismissed on qualified immunity grounds.

Allegations regarding purportedly false or misleading search warrant applications are governed by *Franks v. Delaware*, 438 U.S. 154 (1978), which stands for the proposition that a police officer violates the Fourth Amendment if he intentionally or recklessly makes a false statement in the warrant affidavit and the "remaining content" in the affidavit "is insufficient to establish probable cause." *Davis v. City of Little Rock*, 122 F.4th 326, 330 (8th Cir. 2024). Relatedly, a Fourth Amendment violation occurs when an officer "[i]ntentionally or recklessly omit[s] key facts" when applying for a warrant and "the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Hartman v. Bowles*, 39 F.4th 544, 546 (8th Cir. 2022). Thus, in order to assert a *Franks* claim, a Section 1983 plaintiff must plausibly allege that:

> (1) the affiant officer knowingly and intentionally, or with reckless disregard for the truth, included a false or misleading statement in, or omitted information from, the affidavit in support of the warrant; and (2) the affidavit would not establish probable cause if the allegedly false information is ignored or the omitted information is supplemented.

*United States v. Smith*, 715 F.3d 1110, 1118 (8th Cir. 2013); *see also, e.g., Morris v. Lanpher,* 563 F.3d 399, 402 (8th Cir. 2009) (similar); *Bagby v. Brondhaver,* 98 F.3d 1096, 1098 (8th Cir.1996) (similar).

An affidavit supporting a search warrant is presumed to be truthful, *Franks*, 438 U.S. at 164-65, 171, and "[t]ruthful in this context means that the information put forth is 'believed or appropriately accepted by the affiant as true.'" *Morris*, 563 F.3d at 403 (quoting *Franks,* 438 U.S. at 165). "A showing of negligence or innocent mistake is not enough to establish a *Franks* violation." *United States v. Butler,* 594 F.3d 955, 961 (8th Cir. 2010). Where—as here—an asserted *Franks* claim is premised on an alleged *omission*, a plaintiff can challenge the affidavit by showing that "'1) that facts were omitted with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading, and 2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause.'" *Williams v. City of Alexander, Ark.*, 772 F.3d 1307, 1312 (8th Cir. 2014) (citation omitted); *Hartman*, 39 F.4th at 546 (same). As the Eighth Circuit has explained, this test is "governed by an objective standard that is quite amenable to qualified immunity review[.]" *Bagby*, 98 F.3d at 1099.

Here, the sole allegation on which Plaintiff stakes his purported *Franks* claim is that, supposedly, "the [warrant] application failed to disclose that officers had already entered Plaintiff's residence prior to seeking a warrant." 1AC ¶ 36. But as the record properly before the Court irrefutably demonstrates, the search warrant application did indeed disclose this fact, expressly stating: [redacted]

[redacted] DEX-1. (emphasis added);[5] *see Styczinski v. City of Eden Prairie*, No. 24-CV-02664 (JMB/ECW), 2025 WL 2671432, at *5 (D. Minn. Sept. 18, 2025) ("The court need not . . . accept as true allegations that contradict matters properly subject to judicial notice[.]"); *Waters*, 921 F.3d at 734 (the Court need not "adopt the plaintiff's version of the facts if they are blatantly contradicted" by cognizable evidence properly before the Court).

Thus, where Plaintiff has made no plausible allegation the search warrant application for the Blaisdell apartment omitted any material facts *at all*—much less that any omission was made "with the intent to make, or in reckless disregard of whether they thereby make, the affidavit misleading," *Williams*, 772 F.3d at 1312—and where Plaintiff does not allege that the application contained any affirmative falsity or suffered from any other infirmity, Count III should be dismissed on the first prong of the qualified immunity analysis. *Watkins*, 102 F.4th at 951; *see also, e.g., Briscoe v. St. Louis Cnty.*, 172 F.4th at 1007-09 (8th Cir. 2026), *reh'g denied*, No. 25-1668, 2026 WL 1850642 (8th Cir. June 12, 2026) (affirming dismissal of *Franks* claim on qualified immunity grounds, where the "[a]ppellants ha[d] not sufficiently alleged that [the officer who submitted the search warrant application] entertained serious

[5] As explained above, the warrant application pertaining to Plaintiff's Blaisdell apartment is properly before the Court on this motion because it is both "embraced" by the First Amended Complaint and properly subject to judicial notice. *See, e.g., Doran v. Eckhold,* 409 F.3d 958, 962 n.1 (8th Cir. 2005) (taking judicial notice, in a Section 1983 action, of both "the search warrant and supporting affidavit"); *Mysch v. Hutchins*, No. 3:25-CV-128-DPM, 2026 WL 226962, at *1 (E.D. Ark. Jan. 28, 2026) (where the plaintiff asserted a *Franks* violation under Section 1983, the search warrant affidavit attached to defendants' motion to dismiss was "embraced by" the complaint and properly considered on this motion); *Carter v. Ludwick*, 724 F. Supp. 3d 774, 799 (S.D. Iowa 2024), *aff'd*, 139 F.4th 982 (8th Cir. 2025) (similar).

doubts as to the truth or accuracy of any of the facts that he included . . . [nor] that supplementing the affidavit facts with the alleged material omissions" would have precluded proper issuance of the search warrant); *id.* at 1008 ("'[C]hallenges to warrant affidavits may not be conclusory.'") (quoting *Hunter v. Namanny*, 219 F.3d 825, 830 (8th Cir. 2000)); *Miles v. Coleman*, No. 15-CV-3696 (WMW/FLN), 2017 WL 2870498, at *4-6 (D. Minn. July 5, 2017) (finding, on similar grounds, that defendants were entitled to qualified immunity as to a *Franks* claim and dismissing same at pleading stage).

### C. <u>Count II ("Unlawful Search and Seizure")</u>

In Count II, Plaintiff challenges the search of the Blaisdell apartment conducted pursuant to Judge Robbins's duly-issued search warrant. Specifically, this claim alleges that "Defendants conducted a search and seizure following an unlawful entry," 1AC ¶ 30; that "[t]he search and seizure were the direct result of the initial constitutional violation," *id.* ¶ 31; and that "[a]ll evidence is tainted by the unlawful entry," *id.* ¶ 32. Count II should also be dismissed, both because it fails as a matter of law and because Defendants are entitled to qualified immunity with respect to the challenged actions.

Initially, while Plaintiff's pleading is not a model of clarity, insofar as Count II is intended to raise some sort of claim derived from the exclusionary (or "fruit of the poisonous tree") rule, that doctrine has no application in this civil context. Because the Fourth Amendment does not itself contain any enforcement mechanism, "[t]o supplement the bare text [of that Amendment], [the Supreme] Court created the exclusionary rule, a deterrent sanction that bars the prosecution from introducing evidence obtained by way of a Fourth Amendment violation." *Davis v. United States*, 564 U.S. 229, 231-32 (2011). However,

as the Eight Circuit has held in no uncertain terms, "the exclusionary rule does not apply in § 1983 cases, because the use of illegally obtained evidence (as opposed to an unlawful search or seizure itself) is not a constitutional violation." *Klein v. Steinkamp*, 44 F.4th 1111, 1116 (8th Cir. 2022) (citation omitted) (collecting cases); *see also, e.g. Black v. Wigington*, 811 F.3d 1259, 1267-68 (11th Cir. 2016) (explaining that the "the exclusionary rule is not a 'personal constitutional right' or a requirement of the Fourth Amendment," bur rather "a 'judicially created remedy' that is meant to prevent violations of the Fourth Amendment 'through its deterrent effect'"—and holding that, accordingly, "the exclusionary rule and the fruit-of-the-poisonous-tree doctrine never apply in a civil suit against police officers") (quoting *United States v. Calandra,* 414 U.S. 338, 347-48 (1974)). Thus, insofar as Plaintiff predicates Count II on the exclusionary rule, this doctrine is simply inapt to any Section 1983 claim or theory—and Count II must be dismissed for failure to state any legally cognizable claim.

Alternatively, if Count II is construed as a challenge not to any use of "tainted" evidence, 1AC ¶ 32, but rather to the allegedly "unlawful search or seizure itself," *Klein*, 44 F.4th at 1116, qualified immunity applies and requires the same end result. Here, it is beyond cavil that a search is reasonable under and thus comports with the Fourth Amendment "if the officer [conducting the search] has a valid search warrant." *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016). In accordance with this bedrock principle of constitutional law, it is thus equally well-established that where—as here—"the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner," and generally confers a "shield of immunity" to officers acting within

its scope. *Messerschmidt*, 565 U.S. at 546-47; *Kiesling v. Holladay*, 859 F.3d 529, 533 (8th Cir. 2017) (affirming that *Messerschmidt* is controlling authority "where an alleged Fourth Amendment violation involves a search or seizure conducted pursuant to a warrant," and a qualified immunity defense is raised).

While, to be sure, "this rule is not absolute," *Kiesling*, 859 F.3d at 533, it is only overcome in the exceptionally limited circumstance in which "the warrant was 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" *id.* (quoting *Messerschmidt*, 565 U.S. at 547). Thus, "the threshold for establishing this exception is a high one, and it should be." *Messerschmidt*, 565 U.S. at 547. Moreover, as the Eighth Circuit has explained:

> it is important to emphasize that the relevant inquiry in cases such as this is not whether a warrant application was, in fact, sufficient to establish probable cause of criminal activity. Rather, when a search or seizure is conducted pursuant to a duly issued warrant, we must determine whether it was 'entirely unreasonable' for an officer to *believe* that the warrant application established probable cause.

*Kiesling*, 859 F.3d at 534; *see also United States v. Carpenter*, 341 F.3d 666, 669 (8th Cir. 2003) ("[A] warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search") (citations omitted).

Here, Plaintiff alleges no facts from which this Court could plausibly infer that it was "entirely unreasonable" for Defendants to believe the warrant application for the Blaisdell apartment did not establish probable cause. As explained above, the application averred that [redacted]

[redacted]

"A warrant is supported by probable cause if there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." *United States v. Paton*, 535 F.3d 829, 836 (8th Cir. 2008). Probable cause is determined based on the totality of the circumstances, *id.*, and "requires only a showing of fair probability, not hard certainties." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008). These standards are amply satisfied by both the application and by the warrant itself—from which it necessarily follows, *a fortiori*, that it was not '"entirely unreasonable"' for the officers who executed the warrant "to *believe* that the warrant application established probable cause." *Kiesling*, 859 F.3d at 534.[6]

[6] It bears emphasizing that while the warrant application disclosed the brief pre-warrant entry into the apartment, it did not rely on any observations made by MPD officers during the entry as a basis for probable cause. DEX-1. *Cf. Ruiz-Estrada*, 312 F.3d at 404 (affirming denial of suppression motion, where "the affidavit filed in support of the search warrant contain[ed] no information indicating the police exploited their presence while securing the apartment").

Thus, any Defendant who this Court may determine is properly named as to Count III is entitled to qualified immunity and dismissal of this claim. Moreover, the above-discussed fatal deficiencies—in particular, the fact that the challenged search was conducted pursuant to a duly-issued judicial search warrant that was, objectively, supported by probable cause—are not of a nature that is susceptible to potential cure through amendment. Accordingly, Defendants respectfully urge that dismissal of Count II be made with prejudice. *Wolff*, 997 F. Supp. 2d at 980 n.8.

**D. Count IV ("Malicious Prosecution")**

In Count IV Plaintiff alleges—if opaquely—that "Defendants initiated criminal proceedings against Plaintiff," 1AC ¶ 40; that these "proceedings were based on evidence obtained through unlawful entry and search," *id.* ¶ 41; that "[t]he criminal case terminated in Plaintiff's favor," *id.* ¶ 42; and that "Plaintiff suffered [unspecified] damages as a result," *id.* ¶ 43.

Initially, this claim appears to suffer from the same fundamental misapprehension regarding the exclusionary rule—which "never appl[ies] in a civil suit against police officers," *Black*, 811 F.3d 1268—as was explained above in relation to Count II. As the Supreme Court has recently held, in order to pursue a claim for malicious prosecution under the Fourth Amendment, a plaintiff must plausibly allege that "(1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was malicious, and (3) the prosecution terminated in acquittal or discharge of the accused." *Klein*, 44 F.4th at 1115 (citing *Thompson v. Clark*, 596 U.S. 36, 44 (2022)). Thus, "[t]he absence of probable cause . . . is an essential element of a claim alleging malicious prosecution" under

the Fourth Amendment," such that where that element is unsatisfied, the "malicious prosecution claim[] fail[s] as a matter of law." *Id.* at 1115.

Here, Plaintiff does not allege that probable cause for the initiation of criminal proceedings against him did not exist, but rather only that such proceedings "were based on evidence obtained through unlawful entry and search." 1AC ¶ 41. But even assuming (*arguendo*) the truth of this allegation, as explained above the exclusionary rule simply "does not apply in § 1983 cases." *Klein*, 44 F.4th at 1116. Thus, because this rule applies with equal force to the "lack of probable cause" element of a Fourth Amendment malicious prosecution claim, any such claim necessarily fails. *See, e.g., Black*, 811 F.3d at 1268 ("[Plaintiffs'] claim of malicious prosecution fails because [Defendants] are entitled to qualified immunity. The evidence from the [plaintiffs' trailer provided probable cause for the arrest warrants. It does not matter whether that evidence was discovered in compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police officers."); *Smith v. Stepanski*, No. CV 22-4739, 2024 WL 3761742, at *3 (E.D. Pa. Aug. 12, 2024) (explaining that even where "the fruits of the allegedly illegal search may be inadmissible in criminal proceedings under the exclusionary rule, the illegality of said search does not vitiate the existence of probable cause in relation to the Court's malicious prosecution analysis") (citation and alteration omitted) (collecting cases).[7]

---

[7] Plaintiff also fails (at minimum) to allege a fourth required element of a constitutional malicious prosecution claim—namely, "an unreasonable seizure of his person." *Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024); *Ward v. City of Sherwood, Arkansas*, 173 F.4th 994, 1000 (8th Cir. 2026); *Brown v. City of Dermott Arkansas*, 151 F.4th 985, 990 (8th Cir. 2025) (explaining that this element requires that "there must [have] be[en] either physical force or … submission to the assertion of authority," and that the issuance of a summons, alone,

In any event, there is an even more fundamental reason mandating dismissal of this claim—which is that "the Supreme Court [only] recently declared that malicious prosecution is actionable under the Fourth Amendment," *Klein*, 44 F.4th at 1115 (citing *Thompson*, 596 U.S. 36)—and prior to the issuance of *Thompson* in April 2022, the Eighth Circuit *did not recognize* a stand-alone malicious prosecution claim under the Fourth Amendment (or, thus, under Section 1983) *at all*. *See Robinson v. Norling*, 25 F.4th 1061, 1063 (8th Cir. 2022) (affirming, less than two months before the issuance of *Thompson*, that in the Eighth Circuit "'malicious prosecution by itself'" was not, at that time, "'punishable under § 1983 because it does not allege a constitutional injury'") (quoting *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)); *see also, e.g.*, *Martin v. Julian*, 18 F.4th 580, 584 (8th Cir. 2021) ("[W]e have held that 'an allegation of malicious prosecution without more cannot sustain a civil rights claim under § 1983.'") (quoting *Joseph v. Allen*, 712 F.3d 1222, 1228 (8th Cir. 2013)); *Bates v. Hadden*, 576 F. App'x 636, 639 (8th Cir. 2014) (per curium) (similar); *Allen v. Monico,* No. 4:20-CV-3091, 2021 WL 733328, at *4 (D. Neb. Feb. 16, 2021) (dismissing federal malicious prosecution as barred by qualified immunity because there was not, at that time, any "authority in the Eighth Circuit or the Supreme Court that has placed this constitutional question beyond debate."); *Pleus v. Hoeh-Pistorio*, No. 1:23-CV-196-MTS, 2024 WL 3161617, at *4 (E.D. Mo. June 25, 2024) (holding that, because *Thompson* "was decided in 2022," and "Plaintiff willingly admits that the actions giving rise to [his malicious prosecution] claim began August 3, 2020," the "time discrepancy" between those dates meant that qualified

---

does not qualify). Count IV makes no such allegation and thus fails on this independent ground as well.

immunity barred the claim); *Garner v. Green*, No. 2:20-CV-50-DPM, 2022 WL 2193038, at *4 (E.D. Ark. June 17, 2022) (post-*Thompson* decision similarly holding that qualified immunity barred a malicious prosecution claim based on pre-*Thompson* conduct); *Dukeman v. Ste. Genevieve Cnty.*, No. 1:24-CV-00149-NCC, 2025 WL 895327, at *12-13 (E.D. Mo. Mar. 24, 2025), *rev'd in part on other grounds*, 167 F.4th 500 (8th Cir. 2026) (similar); *accord Wallace v. Taylor*, No. 22-20342, 2023 WL 2964418, at *5-6 (5th Cir. Apr. 14, 2023).

Because "[a] claim that" a given court has "expressly not recognized is the antithesis of a clearly established one," *Watts v. Northside Indep. Sch. Dist.*, 37 F.4th 1094, 1096 (5th Cir. 2022), qualified immunity bars the assertion of this claim against any Defendant. Further, because this outcome is not susceptible to cure through amendment, Defendants respectfully request that Count IV also be dismissed with prejudice. *Wolff*, 997 F. Supp. 2d at 980 n.8.

### E. <u>Count VI ("Failure to Intervene")</u>

With respect to Count VI, Plaintiff alleges only that unspecified "Defendants were present during the violation of Plaintiff's constitutional rights," 1AC ¶ 50; that unspecified "Defendants had the opportunity to prevent or stop the [unspecified] "conduct," *id.* ¶ 51; that "Defendants failed to intervene," *id.* ¶ 52, and that "[s]uch failure constitutes a violation of Plaintiff's rights," *id.* ¶ 53. Even by lenient *pro se* standards, these threadbare and wholly conclusory assertions fail to put Defendants on anything resembling reasonable notice of what actions Plaintiff purports to challenge by this claim, and Count VI should accordingly be dismissed. *See Iqbal*, 556 U.S. at 678 (although Rule 8 "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation," and "[a] pleading that offers" nothing more than "labels and conclusions or a formulaic recitation of the elements of a cause of action will not do").

Additionally, even assuming that the Eighth Circuit recognizes a "failure to intervene" claim outside of the context of excessive force claims (which Plaintiff does not assert here), it is in any event well-established in this Circuit that "[w]ithout an underlying constitutional violation, there can be no liability for failure to intervene." *Peterson v. Heinen*, 89 F.4th 628, 640 (8th Cir. 2023) (citation omitted); *see also, e.g., Perkins v. City of Des Moines*, 168 F.4th 1100, 1107 (8th Cir. 2026) ("[B]ecause [the defendant] did not commit a constitutional violation, [the plaintiff] cannot prevail on her failure-to-intervene claim."); *Bloodworth v. Kansas City Bd. of Police Commissioners*, 89 F.4th 614, 628 (8th Cir. 2023) (similar). Accordingly, this claim must also necessarily fail for the independent reason that Plaintiff has failed to adequately allege any underlying constitutional violation on which to predicate a "failure to intervene" claim.

### F. Count IX ("Unreasonable Seizure and Retention of Property")

In Count IX, Plaintiff alleges that Defendants retained his cellular phone "through the duration of the criminal case," and "failed to provide adequate process for the return of Plaintiff's property, in violation of the Fourteenth Amendment." 1AC ¶¶ 67, 70. This claim also fails. Section 626.04 of the Minnesota Statutes "creates a remedy for the return of property seized by law enforcement with or without warrant." *In re K.M.*, 940 N.W.2d

164, 170 (Minn. 2020).[8] Pursuant to this statute, the owner of property that has been seized by law enforcement may make a written request to the law enforcement agency for return of the property. Minn. Stat. § 626.04(a). If the property is not returned within 48 hours, the owner may file a petition in court for its return. *Id.* Section 626.04 "provides a speedy and informal remedy." *In re K.M.*, 940 N.W.2d at 170. Plaintiff does not allege that he moved under section 626.04 or that he otherwise asked for his phone back. Without these allegations, Plaintiff cannot plausibly claim that anyone "failed to provide adequate process for the return of Plaintiff's property." *See Zinermon v. Burch*, 494 U.S. 113, 126 (1990) ("The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process."); *see also, e.g., Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000) ("In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate. '[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them.'") (quoting *Dusanek v. Hannon,* 677 F.2d 538, 543 (7th Cir.1982)); *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). And finally, Count IX also fails because its implausible that one or any Defendants personally maintained custody of his phone for five years while the criminal charges against him remained pending.

---

[8] It appears Minn. Stat. § 626.04 is intended to work similarly to Rule 41(g) of the Federal Rules of Criminal Procedure, which also provides a means for owners of property to have their property returned.

## CONCLUSION

For the reasons set forth above, Plaintiff's First Amended Complaint, ECF 12, should be dismissed in its entirety.

Respectfully submitted,

Dated: September 3, 2026

MINNEAPOLIS CITY ATTORNEY'S OFFICE
Kristyn Anderson - City Attorney
By */s/ Antonia Konkoly*
ANTONIA KONKOLY (#0504377)
MARK ENSLIN (#0338813)
MICHAEL BREY (#0398620)
Assistant City Attorneys
Minneapolis City Attorney's Office
350 South Fifth Street
Minneapolis, MN 55415
(612) 430-8310
(612) 673-2548
toni.konkoly@minneapolismn.com
mark.enslin@minneapolismn.gov
michael.brey@minnapolismn.gov

*Attorneys for the Defendants*